IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    5:25-CR-289 (GTS) |
| | ) | |
| **v.** | ) | **Government's Sentencing Memorandum** |
| | ) | |
| **DAVID HART,** | ) | |
| | ) | |
| **Defendant.** | ) | |

In November 2023, the defendant, David Hart, phoned bomb threats to hospitals, police stations, hotels, and restaurants in the United Kingdom. These calls disrupted the important operations of hospitals and similarly interrupted the normal business operations of the hotels and restaurants. For the reasons set forth below, the Government respectfully requests that the Court impose a sentence within the guidelines range, followed by a term of supervised release.

## I.    OFFENSE CONDUCT

In November 2023, the defendant made a series of threatening phone calls to police stations, hospitals, and businesses in the United Kingdom. In those calls, he typically told the person who answered the phone that he had planted a bomb at their location, which would soon explode. Not only did the defendant make multiple calls, sometimes days apart, to the same victims, but the phone calls were sustained and persistent, sometimes lasting almost a half hour. In one instance, he established contact with the victim again after his phone call was disconnected. He also invoked terrorism in one of the calls by praising the people responsible for the September 11th attacks on the United States. Although some of the individuals to whom the defendant delivered the threats expressed skepticism that he had actually planted bombs, they nonetheless took precautions. Security staff at the threatened locations searched the properties. One of the victim hospitals put the facility in full lockdown while they searched for the explosive

devices. The defendant knew that these calls would be received as the threats he intended them to be.

## II.    PRESENTENCE REPORT

The Government has no objections to the facts set forth in the PSR, and agrees with the guidelines calculations and statutory penalties therein. The maximum penalty for the offense is 5 years' imprisonment, a fine of $250,000, a term of supervised release of up to 3 years, and restitution to the victims of the offense. The total offense level is 13 and his criminal history category is I, which results in an advisory guidelines range of 12 to 18 months' imprisonment.

## III.    SENTENCING RECOMMENDATION

The nature and circumstances of the offense are serious. The threats were hoaxes—he had not actually planted bombs at the victims' locations, nor did he have the means to do so. But he designed his phone campaign to instill fear and disruption, by (1) threatening the same victims multiple times; (2) invoking the individuals responsible for the September 11th attacks on the United States; and (3) persisting in the length of the phone calls and even calling back when he was disconnected. He intended and knew that the victims would interpret his bomb threats as the threats he intended them to be. As a consequence, those locations had their regular business and routines substantially disrupted. They were required to divert resources to sweeping the buildings looking for the bombs that the defendant claimed were there. That the defendant chose to target hospitals in his threats is a particularly aggravating factor. His threat resulted in a full lockdown while security staff searched—causing substantial disruption to the movement of visitors trying to see sick loved ones, employees of the facility, and the patients themselves.

One recording of a threatening phone call also caught the defendant making extremely disturbing comments directed at a child, which was most likely his own daughter, who was

approximately one to two years old at the time of the call.[1] The recording caught the defendant shouting at the child, who was crying. The defendant then threatened the safety of the child, telling the operator that he would "put the kid in the oven," and to make his intention explicit, said "I'm going to harm this child." PSR ¶ 25. The outburst at his crying daughter—barely a toddler—that included threatening her life, is extremely concerning.

The defendant's history and characteristics contain factors both in mitigation and aggravation. In aggravation, he has a history of behaviors that reveal a concerning lack of impulse control no matter what the consequence. When he was nearly 17 years old, he threatened a 70-year-old woman by sneaking up behind her, pointing his finger at her back to mimic a firearm, and telling her, "come with me or I will hurt you." When confronted by police, he claimed that he decided to do that because he believed she had somehow disrespected him, and that he wanted to scare her. He avoided what could have been serious criminal charges because the victim declined to press charges. Several years later, he got into an altercation with an acquaintance after the acquaintance made a comment suggesting that the defendant should have been watching his child closer. That altercation resulted in a broken flower pot—the defendant claims that he broke it by punching it, the victim claimed he threw it at her. Even accepting the defendant's version of events as true, the incident shows his tendency to resort to violence and threats of violence when he feels disrespected.

The defendant's criminal conduct continued even while under pretrial supervision in this case. It appears that the supervising probation officers were extremely accommodating and patient with his various violations, and helped him to locate temporary shelter when he stated

---

[1] At the time of the call, the defendant's daughter was the same young age consistent with the sounds of the child in the background of the call. There is also no indication that the defendant spent time with children that age other than his own daughter.

that he was homeless. But the defendant lost access to the shelter after he stole and destroyed property belonging to another resident there. His conduct was captured on video surveillance, and yet he denied responsibility. He similarly falsely denied using marijuana previously while on release and only admitted the violation to the probation officer after being confronted with a laboratory report. That conduct shows that he has not taken his situation, and his current federal felony charges, seriously.

In mitigation, from a young age the defendant exhibited intellectual limitations and had difficulties in school—both academically and behaviorally. He is diagnosed with several mental-health-related conditions, including OCD, ADHD, and intellectual disability. He was placed on medication for some of these conditions, but decided to stop taking the medicine once he turned 18. The defendant attributes some of the criminal behavior in this case to those conditions.

The Government respectfully submits that a sentence within the advisory guidelines range appropriately accounts for the serious nature and circumstances of the offense while balancing the mitigating circumstances in the defendant's history and considering the purposes of sentencing.

## IV.    SUPERVISED RELEASE

Given the defendant's past course of conduct and his continued criminal behavior while on pretrial release in this case, a term of supervised release to follow imprisonment is needed to assist the defendant in reintegrating into society following his period of incarceration and providing him with the resources and supervision to set him on a path to be a productive, law-abiding citizen. The Government agrees with the recommended special conditions of supervised release set forth in the PSR. The defendant's history of mental health diagnoses, substance abuse, and admitted marijuana use while on pretrial supervision support the imposition of the mental health and substance abuse treatment conditions, and the condition prohibiting the possession of

marijuana and its derivatives. The search condition, extending to electronic devices, is warranted here, where the offense of conviction involved the use of his electronic device, and he did not fully comply on pretrial release regarding the use of an internet-capable device.

## V.    CONCLUSION

For the reasons stated above, the Government respectfully recommends that the Court impose a sentence within the advisory guidelines range, followed by a term of supervised release.

Dated:  October 29, 2025                          Respectfully submitted,

                                                  JOHN A. SARCONE III
                                                  Acting United States Attorney


                                  By:    */s/ Matthew J. McCrobie*
                                         Matthew J. McCrobie
                                         Assistant United States Attorney
                                         Bar Roll No. 702739